## MILLER v. CLARK et al.

(Circuit Court, D. Connecticut. October 5, 1889.)

1. GIFTS—INTER VIVOS.
C., a married woman, having some $6,000 in her name in a savings bank, in accordance with a previously expressed intention directed the bank teller to transfer $1,500 to each of three nieces, which he did, charging her account with $4,500. On her desire that the bank-books should be so made that the money could not be drawn during her life, the teller indorsed on the pass-books: "Only Mrs. C. has power to draw." C. and her nieces wrote their names in the signature book, the word "Trustee" being added to that of C. by the teller. The books were given to C., who, during her life, declared that she was trustee as to this money for her nieces. The nieces accepted the gifts in the life-time of C. Held a valid gift inter vivos, and that, owing to the express declaration of trust by C., no cessation of control over the property given was necessary.

2. EVIDENCE—DECLARATIONS.
Evidence of declarations and acts of the donor at or about the time of the acceptance of the gift, showing her purpose in transferring the deposits to her nieces, was admissible.

In Equity.
James H. McMahon and J. M. Buckingham, for complainant.
W. L. Bennett and W. B. Stoddard, for defendants.

SHIPMAN, J. This is a bill in equity by one of the residuary legatees under the will of Irene Clark, deceased, to compel three of the defendants to deliver to the executor of said will three savings bank books alleged to be in their possession, and to compel the executor to receive said books, to inventory the deposits named therein as a part of the assets of said estate, and to collect the amount due thereon for the benefit of said estate. Mrs. Irene Clark, of Milford, Conn., died in April, 1887, leaving a last will, which was executed in November, 1881, by which, after a specific legacy to her husband, she gave all the rest of her personal estate to six nieces, Irene M. and Martha A. Buckingham, Emma J. and Mary Belle Clark, Ellen C. Platt, and Rosalie Merwin, to be equally divided between said persons; and appointed Alburtus N. Clark, the husband of said Emma J., her executor. At the time of her death she was from 76 to 78 years old, without children, the second wife of Bela Clark, to whom she was married late in life. Her living relatives were a sister and a brother, divers nephews and grand-nephews, nieces and grandnieces. Her personal property, besides a small amount of household goods and wearing apparel, amounted to $7,509.83, mostly consisting of deposits in savings banks. On October 15, 1884, she had $5,871 on deposit in the Connecticut Savings Bank, of New Haven. In

pursuance of a previously expressed intention, she went to said bank on said day, accompanied by Mrs. Nellie C. Platt, gave the teller her bank-book to be written up, and directed that $1,500 should be transferred from her account to each one of the three defendants, Nellie C. Platt, Emma J. Clark, and Mary Belle Clark. This was done, and three new accounts were opened in the names of said three persons, whereby each was credited with $1,500, and Mrs. Irene Clark's account was corresponsively reduced $4,500. Three new pass-books were made out in the names of said three new depositors, and were given to Mrs. Irene Clark. She told the teller that she wanted to have the bank-books so fixed, or the entries so made, that the money should belong to the persons named, but so fixed that they could not draw it and spend it during her life. The teller thereupon entered upon the pass-books the words: "Only Mrs. Irene Clark has power to draw." The ledger accounts were in the names of said three persons. The said bank has a "signature book" so called, in which are entered the signatures of each depositor, and, when trust accounts are opened, the signatures of the trustee and of the *cestui que trust*. Other facts in regard to the depositor or the *cestui que trust* are also entered in this book for the purpose of identification. Mrs. Irene Clark on this day wrote her name in the signature book, to which the teller added, in writing, the word "Trustee," but it did not clearly appear when the word was written. Mrs. Platt wrote her name in the book opposite the number of her pass-book, and the two signatures were included in a bracket. The words, "Mrs. Clark only to draw," were also written in the margin by the teller. Blank slips for the other two donees to sign, and upon which to state the required facts, were given to Mrs. Clark. Upon her return to Milford, on that day, she showed the husband of Mrs. Platt the three bank-books, said that she had given the girls $1,500 each, showed the two slips, and instructed him to have the two other nieces informed that they must be signed and returned to the bank. These slips she kept. In a few days the said two nieces were informed that their aunt had given to each a bank-book of $1,500, and that she wanted them to come to her house and get some slips to sign and return to the bank. The slips were obtained, signed, and returned to the bank, and the portions containing the signatures of the *cestuis que trust* were pasted in the signature book, opposite the respective numbers of the books. The other facts were entered by the teller and some other clerk. After the signatures were pasted in the book,—but how long after did not appear,—the teller also wrote the words, "Mrs. Irene Clark, Trustee," below each signature, and the words, "Mrs. Clark only to draw," in the margin. The bank-books were retained by Mrs. Irene Clark until a short time before her death, when all the seven bank-books in which she was interested were intrusted by her to Mrs. Platt, for some purpose not known, and were, at the request of Mrs. Clark, returned to her three or four days before her death. This request to return was manifestly to satisfy and quiet her husband. Nothing has ever been drawn upon the three books in controversy, either as principal or interest. Other testimony in regard to the executed purpose of Mrs. Irene Clark to give the

three deposits of $1,500 each to the said three persons, as declared by her after her return from New Haven and before the acceptance of the gifts by the absent nieces, and also about the time of and either before or soon after said acceptance, was given. Her executed and completed intention to give said deposits to the three donees, the actual gift, its consummation by an acceptance on their part, and her express declaration of trusteeship during her life, of the said moneys for the benefit of the named persons, were clearly proved. Her purpose to give the several sums so that the funds should belong to said parties, and to create a trusteeship thereof in herself during her life, was plainly declared at the bank, and was honestly, and, so far as appears, at the request of Mrs. Irene Clark only, attempted to be carried out by the teller in accordance with her wishes by the entries which he made upon the books of the bank and the pass-books.

The facts bring the case within any rule which has been laid down in regard to the validity of gifts *inter vivos.* The courts of last resort in Massachusetts and in New York differ from each other in regard to the absolute necessity of an acceptance of the gift of the donee, (*Gerrish* v. *Institution*, 128 Mass. 159; *Martin* v. *Funk*, 75 N. Y. 134;) but there can be no doubt that the donees in this case knew of and accepted the gifts. The authorities unitedly declare that the gift may be made by delivering to the donee, or by the creation of a trust in a third person, or in the donor; and that, where there is an express declaration of trust in the donor, the rule which requires cessation of control and dominion by the donor over the personal property which is given, is not applicable. *Milroy* v. *Lord*, 4 De Gex, F. & J. 264; *Young* v. *Young*, 80 N. Y. 422; *Scott* v. *Bank*, 140 Mass. 157, 2 N. E. Rep. 925; *Minor* v. *Rogers*, 40 Conn. 512; *Boone* v. *Bank*, 84 N. Y. 83. Testimony in regard to the declarations and acts of the donor which were made or which took place before or about the time of the acceptance of the gifts, and which declared her purpose in transferring the deposits to the donees, was objected to. This species of testimony is wont to be admitted in this class of cases for the purpose of showing the intention of Mrs. Clark in making the transfer and holding the books, and of showing the character of said acts. *Scott* v. *Bank, supra.* These statements, being also against the interest of Mrs. Clark, and tending to prove the fact of the gift, are admissible. By the statute of Connecticut, in actions by or against the representatives of a deceased person, the entries, memoranda, and declarations of the deceased relevant to the matter in issue may be received as evidence. No testimony was given by any of the parties to the suit in regard to the acts or declarations of the donor. The complainant makes the point that, in case these transfers were gifts, they were in partial ademption or satisfaction of the residuary bequests under the will. Without stopping to consider the question whether the principle of the ademption of a general or specific legacy is applicable to the case of these residuary legatees, it is sufficient to say that the testimony proves the existence of an intent on the part of the testatrix that the gifts were to have no reference to the testamentary disposition of her property. Let the bill be dismissed.