# WINDSOR COUNTY.

## FEBRUARY TERM, 1835.

PRESENT, HON. CHARLES K. WILLIAMS, *Chief Justice.*
"        "   STEPHEN ROYCE,          }
"        "   SAMUEL S. PHELPS,        } *Assistant Justices.*
"        "   JACOB COLLAMER,          }

DAVID BROWN *vs.* JOSHUA MARSH.

WINDSOR,
*February,*
1835.

A release to one of two joint *tort feasors*, is equivalent to a satisfaction, and enures to the benefit of both.

The declaration in this cause was as follows:

In a plea of the case, for that heretofore, to wit, on the 23d day of October, A. D. 1830, at Landgrove, in the county of Bennington, the defendant combined and conspired with one Jabez Temple, Jr. to cheat and defraud such persons as they might be able to deceive, by the false and deceitful arts and practices of them, the said Marsh and Temple, as herein after set forth—the said Temple being then and there wholly bankrupt, insolvent and irresponsible, as was then and there well known to said Marsh, it was then and there wickedly and fraudulently contrived and agreed by and between the said Marsh and Temple, that said Marsh should furnish and deliver to said Temple, from time to time, certain large sums of money, and that said Temple should go out among those to whom his insolvency was unknown, and there, by aid of said money, and the credit thereby obtained, procure on credit such property as he might be able, making only such payments in part, with such money, as would procure such property on a credit, and then to return such property so procured to said Marsh, who was to receive the same, and keep and dispose thereof as his own, under the feigned pretence of a purchase thereof from said Temple; and they, the said Marsh and Temple, to divide the gains and avail thereof, leaving the persons from whom said property was obtained, unsatisfied

and unpaid. And the plaintiff avers, that in pursuance of said fraudulent and deceitful confederacy, the said Marsh did, on the day and year last aforesaid, at said Landgrove, furnish and deliver to said Temple a large sum of money, to wit, the sum of one hundred dollars, for the purpose aforesaid, with which money the said Temple, on the same day, came to Springfield, in the county of Windsor, and there, by virtue of the credit obtained by said money, did buy, procure and obtain, on credit, from divers persons to whom the insolvency of said Temple was unknown, divers quantities of goods and chattels, and among others, did buy and obtain from the plaintiff, to whom the insolvency of the said Temple was unknown, by said means, on credit, a large quantity of sole-leather, to wit, three hundred pounds, of great value, to wit, of the value of twenty-five dollars, all which leather the said Temple, in pursuance of said confederacy, on the day and year aforesaid, immediately conveyed to said Landgrove, and then and there delivered to said Marsh, who then and there received and held the same as his own, under the feigned pretence of having purchased the same of said Temple—he, the said Marsh, then and there well knowing the same to have been fraudulently procured as aforesaid ; and the plaintiff avers that he remains wholly unpaid for said leather—all which is to the damage, &c.

WINDSOR, *February,* 1835.

Brown *vs.* Marsh.

### EXCEPTIONS.

This case came on to be tried on the general issue joined therein.

The plaintiff, to maintain the said issue on his part, offered the said Jabez Temple, Jr. in the plaintiff's declaration named as having conspired with the said defendant, as a witness.

The counsel for the defendant objected to the admission of Temple to testify in the case, on the ground of his being interested in the event of the cause.

Whereupon, Temple produced a release, executed to him by the plaintiff, under his hand and seal, in the words and figures following, to wit:

"Know all men by these presents, That I, David Brown, of Springfield, in the county of Windsor, and state of Vermont, for and in consideration of one dollar, paid to my full satisfaction before the ensealing hereof, by Jabez Temple, Jr. of Londonderry, in the county of Windham, and state of Vermont, have remised, released and discharged, and by these presents do remise, release and forever discharge the said Jabez Temple, Jr., his heirs, executors and administrators, of and from all, and all manner of action

41

Windsor,
February,
1835.

Brown
vs.
Marsh.

and actions, cause and causes of action, suits, debts, dues, sum and sums of money, liabilities, amounts, covenants, notes of hand, bonds, bills, contracts, agreements, promises, damages, claims and demands, whatsoever, in law or in equity, which, against the said Jabez Temple, Jr. I ever had, now have, or which I, my heirs, executors or administrators can, shall, or may have, for, upon, or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the date hereof.

In witness whereof, I hereunto set my hand seal, this 24th day of November, A. D. 1834.            DAVID BROWN.   (Seal.)

In presence of
    David Whitney,
    Edmund Durrin."

Whereupon, the plaintiff moved to have the said Temple sworn as a witness for the plaintiff in said cause, and he was sworn accordingly.

The defendant then moved the court for leave to file a notice, that under the general issue joined therein, he should offer in evidence the said release, as discharging not only the said Temple, but releasing also his cause of action against the defendant.

Leave was granted.

The counsel for the defendant then insisted that the said release did discharge and release not only the interest of the said Temple, but did also release and discharge the plaintiff's cause of action against the defendant, and requested the court so to charge the jury.

But the court refused so to instruct the jury, and did instruct the said jury that the said release could not avail the defendant as a discharge of the cause of action.

Exceptions made by the defendant, and allowed.

There was in this cause a motion in arrest made by the defendant, which was overruled ; to which decision the defendant likewise excepted.

*Mr. Marsh and Mr. Williams for defendant.*—The case presents this question : Is the release of Temple, set forth in the bill of exceptions, a release of the plaintiff's cause of action, and consequently of this suit?

The release acknowledges satisfaction of all demands, "by reason of any matter, cause or thing whatever." It is, therefore, a release of one *tort feasor* in this cause, and consequently a discharge of all implicated.

Thus, "If divers commit a trespass, though this be joint and several at the election of him to whom the wrong is done, yet if he

WINDSOR,
February,
1835.

Brown
vs.
Marsh.

releases to one of them, all are discharged, because his own deed shall be taken most strongly against himself. Also such release is a satisfaction in law, which is equal to a satisfaction in fact. But he, who would take advantage of such a release, must have the same to produce."—5 Bac. Abr. 702.

"Also if two men doe a trespasse to another, who releases to one of them all actions personalls, and notwithstanding sutch an action of trespasse against the other, the defendant may wel shew that the trespasse was done by him and by another, his fellow, and that the plaintife, by his deed, (which he sheweth forth) released to his fellow all actions personalls, and demanded the judgment, &c. and yet sade deed belongeth to his fellow and not to him. But because hee may have advantage by the deed, if hee will shew the deed to the court, hee may wel plead this," &c.—Coke Lit. 232.

The doctrine laid down in Bacon and Coke, seems to have been universally acknowledged, and there seems to have been yielded to it a general acquiescence. It has become so well known, that in relation to trespass, every one understands that a settlement with one of several trespassers, discharges all, and the community have generally come to practise upon it.

But with respect to the release of persons jointly liable, it is not to trespassers only that the doctrine applies. When the satisfaction goes to the wrong or injury done, or to the release of any one of several joint, or joint and several obligors, its effect is to discharge the cause of action, and to release the debt for which the several are holden. Thus it is said by the supreme judicial court of Massachusetts, "The authorities are perfectly clear that a release to one joint and several obligor discharges both. The reason is, that there is but one debt or duty, and that being once received by the obligee, he can have no further claim; and if he discharge the one upon receiving a part, or something else in lieu of the debt, or if he be satisfied so as to release one, the debt itself must be considered discharged."—*Tuckerman et al.* vs. *Newball,* 17 Mass. 581, 584.

Where a release is made to operate directly on the demand or cause of action between the plaintiff and defendant, if it discharge any one who is liable to such demand, it must of course discharge all who are holden for such demand; and if it do not discharge the cause of action, and all who are liable, it does not release the witness.

Suppose the release had been pleaded in bar, what answer could have been made to it? If the plaintiff had replied that he meant

WINDSOR,
February,
1835.

Brown
vs.
Marsh.

to release Temple only, or that he had received no consideration but a nominal one, the release would have been demurrable.

In *Cuyler* vs. *Cuyler*, it was held that a covenant never to sue A on a note against A & B, inasmuch as it operates as a release to A, was a release of the note.—2 John. Rep. 186.

In *Harrson* vs. *Wilcox et al.* the plaintiff had accepted a certain sum of one of the signers of the note, and agreed to look to the other for the balance. This was a *nudum pactum;* but the court agree that if a release, by deed, had been executed to one, it would have discharged the note.—2 John. Rep. 448, 450. See also *Seymour* vs. *Minturn,* 17 John. Rep. 174.

In *Rowley* vs. *Stoddard,* the plaintiff received an hundred dollars in part payment of one of the defendants, and gave a receipt in full, and afterwards sued both. It was decided that this receipt of a part could not release the whole, but that a technical release would have discharged the demand.—7 John. Rep. 207. 5 East. 230. 9 Wendell, 336.

So a release by one of several plaintiffs to the defendant, in consideration of six cents received, is a complete discharge of a personal action.—13 John. R. 286, *Austin* vs. *Hall.*

In all the cases where a release has been supposed to be proper, in order to discharge a witness, the interest to be released has been a collateral interest, and not a direct interest of the witness in the matter in controversy.

As in *Peirce* vs. *Butler,* the maker of a note may be released by the endorsee, and become a witness in an action between such endorsor and his endorsee.—14 Mass. 303.

So in *Turner* vs. *Austin,* the defendant who was sued as sheriff, for the default of his deputy, may release the deputy, and call him as a witness; because his interest is collateral, he being liable to the defendant only, and not to the plaintiff. But in such case, a release by the plaintiff to the deputy, would have released the sheriff also.—16 Mass. Rep. 181–5.

So an heir to an intestate may release his interest in the estate, and become a witness in a suit in favor of the administrator, on receiving an indemnity from costs.—*Boynton* vs. *Turner,* 13 Mass. Rep. 391,

In *Woods' Adm'r* vs. *Williams' Adm'r,* the plaintiff was administrator of Mrs. Thomas. The estate was going to her husband, David Thomas, who, on executing a release to Woods, was admitted as a witness.—9 John. R. 123.

It is believed that no case can be found in which the plain-

tiff has been allowed to release the matter in controversy to a witness, or any one else, and yet been permitted to recover.

In *Buckley* vs. *Dayton*, John Bowker, who was collaterally holden to the plaintiff, but not directly in the same form of action, was was released and made a witness.—14 John. R. 387-8.

WINDSOR,
February,
1835.

Brown
vs.
Marsh.

*Judge Hutchinson and Mr. Coolidge for plaintiff.*—The first question is, whether a discharge of a witness, who was co-swindler with the defendant, said discharge under seal, naming a consideration of one dollar, discharges the defendant.

It is so common that discharges are given in cases similar in principle, and the actions thereby supported and not defeated, we can hardly believe, while preparing our briefs, that the defendant's counsel will seriously contend, that this discharge of the witness should discharge the action. It discharges the interest of the witness, but makes no compensation to the plaintiff.

However, we present two or three cases, where it was in vain urged, that a receipt to one, neither defendant nor witness, formed a defence; and several cases where the witnesses were discharged by the plaintiff, and yet the plaintiff recovered.

In the 3d of John. Rep. 175, *Wilson and Gibs* vs. *Reed*, a release given by the plaintiffs to the sheriff, who took and sold the goods, urged as a defence to the action brought against the purchaser at the sheriff's sale. And it was decided to be no defence.— Similar in principle is 7 John. Rep. 207, *Rowley* vs. *Stoddard and Stoddard*.

In 1 Camp. Rep. 251, *Miller* vs. *Falconer*, the plaintiff discharged his servant who was driving the cart when the injury was received, and the plaintiff had a verdict.

In 2 Camp. 200, *Wright* vs. *Wardle*, this suit was brought to recover of the defendant for goods furnished to Mrs. Mary Anne Clark, and she was offered as a witness to prove the defendant's liability. She was objected to. The plaintiff executed a release to her and her husband. She testified, and the plaintiff obtained a verdict.

In 14 John. Rep. 387, *Bulkly and Wheeler* vs. *Dayton et al.* the plaintiffs, or rather one of them, released John Bowker from all claims against him and one of the defendants, Reynolds, but not the demands against the other defendants. He was admitted. This action was assumpsit, and the defendants contended, that Bowker and Reynolds might be liable, but that the others were not.

In 11 Mass. Rep. 27, *Stackpole* vs. *Arnold*, this suit was up-

Winesor,
February,
1835.

Brown
vs.
Marsh.

on several notes signed by Z. Cook; and he was called as a witness to prove, that he acted as agent for the defendant. The plaintiff released him from the notes. He was admitted and testified. In all these latter cases, no person seemed to suspect that the discharges from the plaintiffs to the witnesses would operate to discharge the actions.

7 Wend. Rep. 229, *W. & A. Moore* vs. *Tracy*, is an authority to show, that Temple was a competent witness, without a discharge; and also to show, that the declaration discloses a good cause of action against the defendant.

That the declaration is sufficient, we cite 3 John. Rep. 235, *Allison* vs. *Matkien*, where trover was maintained on a state of facts very similar to those disclosed in this declaration.—See 7 Wendell.

Compare this with an action for an injury to an individual from a nuisance in the highway.—See Wills Rep. 71, *Chichester vs. Lethbridge.*

The opinion of the court was delivered by

Williams, Ch. J.—The important question in this case is, as to the effect of a release, executed by the plaintiff to Jabez Temple, Jr. which is set forth in the bill of exceptions. The motion in arrest has not been much relied on: no authority is read in support of it. Such actions have been frequently brought, and the case of *Moore* against *Tracy*, 7 Wendell, 229, shows that in a neighboring state they are recognized. We are not disposed to decide that such an action cannot be maintained. On the trial, it appears, that Jabez Temple, Jr, was offered as a witness: No question was made to the court whether he is admissible without a release. The release set forth was then executed and delivered to him. The cases in which witnesses have been released, are usually those, where they have, or are supposed to have, a collateral interest, which may be affected by the event of the trial. A discharge of such interest, in no way operates upon the cause of action. But where a witness cannot be discharged without discharging the action, or cause of action itself, a party must make out his case as well as he can, without the benefit of the testimony of such witness. The release executed in this case, was very full and ample, discharging all, and all manner of actions, or causes of actions, damages, claims or demands whatsoever. This being under seal, imports a consideration; and is, as to Temple, a full, complete, and ample discharge of every claim or action, which the plaintiff had

against him. A release is considered as a satisfaction in law, and equivalent to a satisfaction in fact.—5 Bac. 762. A release to one of two joint debtors, or to one of two or more joint trespassers, is a release to both, upon the principle of its being a satisfaction; and herein it differs from a covenant not to sue one of two or more joint debtors, which is not to operate as a discharge to the others. A covenant not to sue a sole debtor or trespasser, is considered as equivalent to a discharge, to avoid circuity.

On examining the declaration in this case, it appears that the defendant is charged with conspiring with Temple to defraud such persons as they might be able to deceive. Temple being wholly irresponsible, Marsh, the defendant, was to furnish him with money;—that Temple, by aid of the money and credit thereby obtained, should procure property on credit, on his own responsibility, and that Marsh and Temple were to divide the gains and avails thereof. It is obvious that a combination between the two is charged, and if proved, both the witness and the defendant were liable, and might be sued as joint *tort feasors.*

The cause of action was complete against both or either; and a satisfaction received of one, would discharge the other. The effect of the release was to discharge the cause of action in favor of the plaintiff against the two, and must therefore enure to the benefit of either of them.

The judgment of the county court is therefore reversed, and a new trial granted.